**Mark T. HARRIS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 270, 2009.**

Supreme Court of Delaware.

Submitted: Jan. 13, 2009.

Decided: April 6, 2010.

---

57. *Id.* at 1127.

58. *Id.*

Thomas D. Donovan, Donovan & Hopkins, LLC, Dover, DE, for appellant.

John Williams, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice, BERGER, and JACOBS, Justices for the Majority:

Dover police officers detained Mark Harris 165 feet from the Bibleway Church, and then found a plastic "baggie" containing marijuana in his mouth. Harris asserts that the trial judge erroneously denied his motions for judgment of acquittal of Tampering with Evidence, and of Possession of a Controlled Substance within 300 feet of a Church. Because the police perceived and immediately retrieved the baggie, we **REVERSE** his tampering conviction. Because LIDAR provided a reliable and trustworthy measurement of the distance to Bibleway, and Bibleway presumptively constitutes a "church, synagogue or other place of worship," we **AFFIRM** his possession conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

### Harris placed a "baggie" of marijuana in his mouth.

Dover Police Officers Davis and Barrett observed a car, idling in a parking lot, with its headlights off and windows fogged. Harris and two other men occupied this car. The officers approached the car, and Davis tapped on the window and smelled marijuana when an occupant rolled down the window. The occupants denied having any marijuana, and the officers ordered them out of the car.

A third police officer, Corporal Connick, arrived on the scene. A search of the car revealed a warm, burnt, moist cigarette that the officers suspected—but never confirmed—contained marijuana.

During the search, Connick spoke with Harris. He observed that Harris's speech was muffled, and saw a small piece of plastic in Harris's mouth. Connick waited to catch the other officers' attention, grabbed Harris, and instructed him to spit

out the plastic object. Harris did not immediately comply, but eventually spat out a small plastic bag containing 0.55 grams of marijuana.

### The police measured the distance from the car to Bibleway.

Following the search, Davis noticed the Bibleway Temple Institutional Church of God and Christ located across the street. Davis requested that Stubbs measure the exact distance from the car to Bibleway with a LIDAR. Stubbs measured 165 feet from the car to Bibleway.

At trial, the trial judge overruled Harris's objection to the State's introducing the LIDAR measurement into evidence. Stubbs testified about his qualifications to use the LIDAR device, and that he measured the distance by standing near the passenger's side and "shooting" the distance. The log book confirmed he had calibrated that same LIDAR earlier in the day. External tests confirmed the accuracy and calibration of that LIDAR device.

### Bibleway's sign read "Temple Institutional Church of God and Christ."

Davis saw that the building across the street from the parking lot had a sign that read "Bibleway Temple Institutional Church of God and Christ." He also testified at trial that Bibleway was a church, and that he had gone into Bibleway while responding to an earlier complaint.

## STANDARDS OF REVIEW

We review the trial judge's denial of Harris's motions for a judgment of acquittal *de novo* to determine whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found Harris guilty, beyond a reasonable doubt, of the essential elements

of the crime.[1]

We review the trial judge's evidentiary rulings for abuse of discretion.[2]

## ANALYSIS

### A. Tampering with Evidence

11 *Del. C.* § 1269 criminalizes neither inchoate tampering nor tampering with items, but, rather, successful suppression of evidence.[3]

#### 1. Police immediately retrieved the evidence from Harris's mouth.

■ Section 1269 does not apply to an *attempted* "act of concealment, alteration or destruction." Rather, it applies when the defendant "suppresses" the evidence by *actual* completed concealment, alteration, or destruction.

In *Pennewell v. State*, we held that the defendant did not tamper with evidence, because the drugs were "visible and immediately retrievable."[4] Although Pennewell attempted to hide drugs from an approaching police officer, we held that he failed to commit the crime of Tampering with Evidence.[5]

Here, Connick saw plastic in Harris's mouth. Connick obviously believed that the plastic may have been a baggie containing contraband. Harris did not immediately spit out the baggie when the police officers told him to do so, nor did he successfully partially conceal the item for more than a brief moment. *Pennewell* does not require the police to retrieve potential evidence immediately. Rather, it requires "immediately retrievable" evidence. This rule makes sense, because it focuses on whether the defendant actually completed the required act of suppressing evidence.[6] This rule in *Pennewell* also comports with our earlier decisions.

The exception, as we explained in *Pennewell*, applied to "abandonment," which results from failed "concealment." Whether Harris attempted to "destroy" the evidence does not materially affect our application of *Pennewell*. Rather, we may consider whether the evidence was "visible and immediately retrievable" to determine whether Harris failed to "destroy"—and by actually doing so, "suppress" the evidence. If he failed to suppress the evidence, then he did not meet the § 1269 felony tampering requirements.

In *Pennewell*, we discussed cases where the police could immediately retrieve evidence that the defendant attempted to suppress. We noted that police could immediately retrieve evidence from on top of

---

**1.** *Pennewell v. State*, 977 A.2d 800, 801 (Del. 2009).

**2.** *Zimmerman v. State*, 693 A.2d 311, 313 (Del.1997).

**3.** "A person is guilty of tampering with physical evidence when:
(1) Intending that it be used or introduced in an official proceeding or a prospective official proceeding the person:
a. Knowingly makes, devises, alters or prepares false physical evidence; or
b. Produces or offers false physical evidence at a proceeding, knowing it to be false; or
(2) Believing that certain physical evidence is about to be produced or used in an official

proceeding or a prospective official proceeding, and intending to prevent its production or use, the person *suppresses it* by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person.
Tampering with physical evidence is a class G felony." (emphasis added).

**4.** 977 A.2d 800, 803 (Del.2009).

**5.** *Id.*

**6.** *Id.* at 802. "But the fact that he wanted to dispose of the drugs, does not mean that he was tampering with evidence."

a garage roof,[7] the ground,[8] and a bush.[9] In each of these cases, the police officers saw the defendant attempt to suppress evidence, and they could "immediately" retrieve that evidence, thus frustrating the defendant's attempt to prevent its use against him in an official proceeding.

In *Hardy v. State,* when upholding a § 1269 conviction of a defendant who placed a bag of drugs in his mouth during a traffic stop, we misstated the applicable standard.[10] We held that the jury had properly considered whether "Hardy had damaged *or was attempting to destroy* the drugs."[11] That, regrettably misstated the law. Section 1269 does not punish 'attempted suppression of evidence,' nor does it punish 'attempted concealment, alteration, or destruction of evidence.' The statute provides that "the person *suppresses* [evidence] by any act of concealment, alteration or destruction...."[12] The police officer noticed that Hardy clenched his jaw while speaking, and surmised that Hardy was concealing contraband in his mouth.[13] Hardy's conviction could have been affirmed under the proper standard. That said, we emphasize here that § 1269 punishes only materialized suppression—not its mere attempt.

Delaware law punishes attempted crimes in a manner that corresponds to the underlying offense's severity. 11 *Del. C.* § 531 applies proportionate penalties to inchoate criminal actions.[14] Section 1269,

on the other hand, punishes a substantive offense, and does not allow the underlying offense to determine the degree of punishment. Whereas prosecutors may charge § 531 attempt crimes with the proper level of statutory force, § 1269 always carries felony penalties. We must, therefore, *apply § 1269 consistent with the statutory intent.* Our concurring colleagues believe that we misconstrue the General Assembly's intent. We believe the General Assembly relied on the commentary when it adopted our Penal Code. The commentary makes it clear that § 1269 cannot be read to felonize misdemeanor infractions of the Code.

The Delaware Criminal Code Commentary to § 1269 guides our understanding and the State's prosecution. The Commentary states that tampering deserves felony penalties, because "[t]he crime is serious ... so the dangers of a miscarriage of justice are multiplied when such evidence is fabricated or concealed."[15] Anyone who breaks into an evidence room, takes something from a police officer, or frustrates a search warrant obtained through probable cause has committed a "serious crime." But, someone who temporarily frustrates a police officer's happenstance investigation of a hand- or bag-full of drugs, has not committed a "serious crime." Harris did not commit a "serious crime" or "multiply dangers of a miscarriage of justice."

---

7.  *Commonwealth v. Delgado,* 544 Pa. 591, 679 A.2d 223 (1996).

8.  *Vigue v. State,* 987 P.2d 204 (Ak.Ct.App. 1999).

9.  *Pennewell,* 977 A.2d at 801.

10.  *Hardy v. State,* 2007 WL 2696719, at *1 (Del.Supr. May 18, 2007).

11.  *Id.*

12.  11 *Del. C.* § 1269(2) (emphasis added).

13.  *Hardy v. State,* C.A. No. 502, 2006, at 36 (Del.Super. June 28, 2006) (TRANSCRIPT).

14.  11 *Del. C.* § 531.  11 *Del. C.* 531 (Attempt to commit a crime is an offense of the same grade and degree as the most serious offense which the accused is found guilty of attempting).

15.  Commentary to 11 *Del. C.* § 1269.

As *Pennewell* explains, briefly hiding contraband until the police take the contraband and the defendant into custody, does not constitute "suppress[ion] by any act of concealment." At best, that constitutes 'delay by an act of concealment.' In these circumstances, that defendant has failed to suppress evidence from production or use against him. Whether the defendant briefly hides evidence on a rooftop or in his mouth, if the police perceive the act of concealment and could immediately retrieve the evidence, the defendant has failed to "suppress" evidence under § 1269.

Because Connick saw the baggie and "immediately retriev[ed]" it from Harris's mouth, Harris did not suppress evidence within the meaning of to 11 *Del. C.* § 1269.

### 2. Police must perceive—visually, aurally, or otherwise—the evidence.

Although Connick testified to *seeing* the evidence in Harris's mouth, he also testified to *hearing* something muffle Harris's voice. Whether he initially detected the evidence through visual or auditory perception should not be controlling. Because both hearing the baggie's muffling effect and seeing the plastic in Harris's mouth gave Connick notice of Harris's attempt to suppress evidence, either perception would have frustrated Harris's requisite completion of the act of suppression. *Pennewell* states that a defendant has not committed tampering, when the evidence is "visible," but the rationale underlying that usage requires only perception—either visual, auditory, or both.

In *Pennewell*, we cited *Anderson v. State*, a case where we upheld a tampering

conviction.[16] In *Anderson*, the police deduced from a toilet's clogging that the resident suspected drug dealer might have flushed drugs. The police disassembled the toilet, and found a purse with a plastic bag of cocaine. Although the police officers immediately retrieved the evidence, they did not perceive Anderson's act of suppression. Rather, the police officers relied on Anderson's girlfriend's statement that something might have clogged the toilet. Anderson had already completed his act of suppression without police detection. Harris, in contrast, still held visible evidence in his mouth. Consequently, the police contemporaneously perceived his attempted suppression. *Pennewell* controls Harris's conduct, but not Anderson's.

### 3. The drugs must be immediately retrievable.

We also noted that, "[i]f, instead, Pennewell had been standing by a water drain and managed to drop the drugs into the drain, it is likely that the result would be different."[17] That is, Pennewell likely would have committed the crime of Tampering with Evidence had the drugs fallen into the water drain. Just as police may immediately retrieve evidence from an elevated garage roof,[18] they may also immediately retrieve evidence from a subterranean water drain. Our comment about water drains is based on the solubility of drugs and the movement by water throughout a labyrinthine drainage system. If a police officer had to climb the same ladder to mount a roof or descend into a drain, and the evidence remained exactly where and how it initially fell onto both surfaces, the result should not differ. If, on the other hand, some drugs dispersed or dissolved into the water, or the

---

**16.** *Pennewell,* 977 A.2d at 803 (citing 2004 WL 744188 (Del.Supr. Apr.5, 2004)).

**17.** *Pennewell,* 977 A.2d at 803.

**18.** *Delgado,* 679 A.2d at 225.

police could not find the drugs, then the defendant would have suppressed the evidence's use in an anticipated official proceeding by destroying it.

### 4. Police may perceive either the drugs, or the act of suppression.

■ Here, we also parse our statement in *Pennewell* that the State could not prove tampering, because the drugs were "visible and immediately retrievable." The police must be able to retrieve the evidence immediately, as described above. A police officer may frustrate a defendant's attempt to suppress evidence, by perceiving the evidence *or* the defendant during the act of suppression.

In *Delgado*, a case where police officers saw a defendant shaking [19] and making a throwing motion during pursuit [20] before recovering discarded drugs, the defendant did not commit the crime of tampering. In *Pennewell*, we reversed a tampering conviction, where a police officer saw drugs fall, although he did not see the defendant make a throwing motion.[21] Whether the police perceived the evidence or perceived the defendant's movement during the act of suppression did not affect either the police's recovery of the evidence, or the court's decision.

The rule we adopt here also comports with cases where this Court has affirmed tampering convictions. In *Fletcher v. State*,[22] we affirmed the defendant's conviction when he hid evidence from police in a car's glove compartment and side door pocket. After pulling Fletcher over for a traffic infraction, the police officer did not see him hide evidence, but discovered it after searching the car. Although the evidence was "immediately retrievable," the police officer did not perceive the evidence or the defendant, during the act of suppression.

*Fletcher* highlights an important distinction between the facts in *Anderson* and in this case. In *Anderson*, the police officers perceived a potential concealment *after the defendant had completed* his act of suppression—akin to the facts in *Fletcher*. Anderson hoped that the police would fail to discover a purse, and his suppression was completed: nothing remained for him to do to prevent prosecutors from using the evidence in an official proceeding. Here, however, Harris still had the drugs in his mouth so that the inchoate suppression was still in progress when Connick contemporaneously perceived the bag of marijuana in Harris's mouth. Harris could not leave the evidence in his mouth but would need to remove and conceal it or, as the indictment suggests, "swallow" the plastic baggie and its contents in order to meet the suppression element of § 1269.

### 5. Items constitute 'evidence,' for tampering, after the police control the item.

In *Pennewell*, we expressly adopted "the reasoning of the *Delgado* and *Vigue* courts."[23] Although we stated a practical and useful rule to determine abandonment, we declined to draw the precise boundaries of evidence that falls within the scope of § 1269.[24] The court in *Vigue* relied on a New Jersey decision,[25] but declined to

---

19. *Vigue*, 987 P.2d at 205.

20. *Delgado*, 679 A.2d at 225.

21. *Pennewell*, 977 A.2d at 801.

22. 2005 WL 646841 (Del.Supr. Mar. 16, 2005).

23. 977 A.2d at 803.

24. *Id.*

25. *State v. Fuqua*, 303 N.J.Super. 40, 696 A.2d 44 (A.D.1997).

adopt expressly the rule that, "as applied to possessory offenses, the statute should be construed to apply only to *completed* crimes."[26] We now adopt the Supreme Court of New Jersey's rationale articulated in *State v. Fuqua,* because that rationale comports with our statutory scheme, precedent, and fair public policy.

Prosecutors and the courts should avoid leveraging misdemeanor drug possession prosecutions with additional, felony tampering penalties. We have noted that § 1269 recognizes "evidence," for purposes of tampering, when "[a defendant] knew the marijuana would be used in a prospective criminal trial."[27] This subjective test could apply to every possessor of an illegal drug with having the requisite "belie[f] that certain physical evidence is about to be produced or used in an official proceeding."[28] This theory could unfairly aggravate drug possession crimes because by the very nature of contraband, if police discover a defendant possessing the contraband, they will seize it as potential evidence.

We also must define more precisely what is meant by the defendant's belief regarding evidence that is *"about to* be used or produced."[29] "About to" infers procedural immediacy—not temporal immediacy. The statute applies to tampering with evidence related to any crime or official proceeding. Thus, § 1269 must apply to murder cases that have no statute of limitations, as well as lesser misdemeanors that the State might prosecute within only a few weeks or months. Unless and until the police have control of the item, a defendant may have no reason to believe that

the police are "about to" use that item as evidence.

The courts in *Vigue* and *Fuqua* observed this overinclusive theory whereby "a defendant would be required to have the cocaine in plain view in order to avoid committing this crime [of Tampering with Evidence].... To avoid this result, the *Fuqua* court ruled that, as applied to possessory offenses, the statute should be construed to apply only to *completed* crimes."[30] The *Fuqua* approach draws a clear line for prosecutors and defendants, maintains felonious punishment for the serious crime of intentionally undermining evidence in an official proceeding, and prevents substantial overlap of misdemeanor possession and activity that constitutes felony tampering. Because a defendant completes the illegal act of possession as soon as he obtains the contraband, *Fuqua* is better understood as precluding a tampering conviction until the underlying crime *ends.*

Although the *Fuqua* court drew a necessary line that separates mere 'items' from 'evidence' for § 1269 tampering, a better approach to separating 'items' from 'evidence' (with which a defendant may tamper) would be where the police have taken control of the item. Our holding in *Sims v. State* illustrates this application of § 1269: Sims took drugs from the top of a police cruiser, immediately after a police officer took the drugs from Sims and then turned his head. Sims had also dissolved drugs in his mouth before taking the drugs from the top of the police cruiser. We noted that his taking drugs from police

---

26. *Vigue,* 987 P.2d at 209, 211 (quoting *Fuqua,* 696 A.2d at 46–47) (emphasis in original).

27. *Pennewell,* 977 A.2d at 801.

28. 11 *Del. C.* § 1269(2).

29. 11 *Del. C.* § 1269(2) (emphasis added).

30. *Vigue,* 987 P.2d at 209 (quoting *Fuqua,* 696 A.2d at 47) (emphasis in original).

control was "[m]ost damaging to Sims."[31] Although he arguably tampered with evidence by initially dissolving the drugs in his mouth, he certainly violated § 1269 by taking drugs *after* the police had taken them under their control.

An "item" also becomes 'evidence' for the purpose of § 1269 when the police take constructive control of the premises. In *Anderson,* the police executed a search warrant allowing them to search for drugs in the defendant's house.[32] Upon entering the house, the police took constructive control of the premises named in the warrant. At that point, Anderson's belief that the State could introduce his bag of cocaine at trial was reasonable, because the police's probable cause and search made his trial procedurally imminent. That is, he acted to suppress the cocaine with a credible reason to believe that the State was "about to" introduce it as evidence. We also noted that Anderson, unlike Harris, had completed his act of suppression. The police, therefore, could not perceive either Anderson or the drugs during the act of suppression. Thus, Anderson could not fall within the *Pennewell* set of cases.

In *Fletcher,* the police took constructive control of Fletcher's car and its contents, when they performed a traffic stop.[33] The testimony supporting *Fletcher's* concealment after the stop and following a substantiated belief that the police were "about to" produce the contraband in his car at trial, is consistent with our analysis here. Significantly, Fletcher's driver testified that Fletcher did not conceal the contraband until after the police stopped and took constructive control of their car. Had he acted before the traffic stop—that is, without a substantiated belief of procedur-

al immediacy—Fletcher would have merely concealed an "item," not "evidence."

Before the police take control of the item and make it 'evidence' for the purpose of § 1269, the officers may instruct a suspect not to move or discard any objects. If the suspect disobeys the officers' instruction, the prosecutor may charge the defendant with a crime that appropriately reflects his disobedience. The State may not, however, successfully convict the defendant of Tampering with Evidence. The Commentary, discussed above, would also prevent the State from convicting a defendant of attempted tampering under § 531, where he conceals, e.g., an item that does not constitute evidence because the defendant has no belief of procedural immediacy.

The General Assembly has criminalized certain acts of possession and use; the tampering statute does not aggravate those crimes when committed outside of the State's vigilance. Section 1269 punishes only those "serious criminals" who *suppress* items that constitute *evidence.* Harris could not suppress any evidence here by merely "attempting to" swallow an item in plain view of the police, even if a rational person could believe that he intended to "swallow" both the baggie and its contents.

## B. Possession of a Controlled Substance Within 300 Feet of a Church

### 1. Harris possessed marijuana within 300 feet of a place of worship.

The jury also convicted Harris of Possession of a Controlled Substance within 300 feet of a Church. He appeals that conviction on two grounds. First, he claims that the trial judge abused his discretion by admitting the LIDAR distance

---

**31.** 2007 WL 2123781, at *2 (Del.Supr. July 25, 2007).

**32.** 2004 WL 744188, at *1.

**33.** *Fletcher,* 2005 WL 646841, at *1.

measurement of 165 feet into evidence.[34] Second, he claims that the State did not prove that Bibleway constitutes a "church, synagogue or other place of worship," as required by 16 *Del. C.* § 4768. After reviewing Harris's arguments,[35] we disagree.

### a. Admission of LIDAR distance measurement.

■ Harris contends the LIDAR device provides unreliable and untrustworthy distance measurements. Delaware courts have admitted LIDAR distance and speed measurements, after the State offers a trained and certified operator's testimony, and a proper foundation for the testimony.[36] In *Jarwan,* the trial judge ruled, based on expert testimony, that LIDAR devices provide "admissible, relevant, and scientifically reliable" speed measurements.[37] Because LIDAR calculates admissible speed measurements, based upon its distance measurement to the target, it follows that a trial judge could reasonably rely upon and admit LIDAR distance measurements.[38] At trial, Stubbs testified to his qualification and operation, and the device's proper calibration and functioning. The trial judge did not abuse his discretion by admitting the LIDAR distance measurement into evidence.

### b. Bibleway is a church, synagogue, or other place of worship.

■ Harris also contends the trial judge erroneously denied his motion for judgment of acquittal of Possession of a Controlled Substance within 300 feet of a Church, because the State failed to establish that Bibleway meets the statutory requirement of a "church, synagogue or other place of worship." Harris cites to Florida decisions where the statute required the State to prove that the 'church' conducted regular religious activities.[39] Unlike Florida law, however, Delaware law omits statutory language requiring the 'church' to regularly conduct religious services. It criminalizes possession of controlled substances "within 300 feet of the boundaries ... of [any] church, synagogue or other place of worship." [40]

At trial, Davis confirmed the nearby building was a 'church' and stated that he had been inside the church to investigate a previous complaint. The building in question displayed a sign that read "Bibleway Temple Institutional Church of God and Christ." The State presented sufficient evidence at trial for a rational trier of fact to conclude that the building in question was a 'church' as contemplated by 16 *Del. C.* § 4768(a). The Superior Court did not err by denying Harris's motion for judgment of acquittal on the charge of Possession of a Controlled Substance within 300 feet of a Church.

## CONCLUSION

For the foregoing reasons, we **REVERSE** in part and **AFFIRM** in part the

**34.** *Jones v. State,* 940 A.2d 1, 9 (Del.2007).

**35.** *Weber v. State,* 971 A.2d 135, 155 (Del. 2009).

**36.** *State v. Jarwan,* 2000 WL 33113846, at *3 (Del.Super.Dec. 8, 2000).

**37.** *Id.* at *3.

**38.** *Id.* at *1 (explaining that "LIDAR ... uses laser pulses to measure distance by beaming a series of laser pulses at a target. When a laser pulse strikes the target, a portion of the light is reflected back and detected. Because the speed of light is a known constant, the device is able to calculate the distance between the device and the target by measuring the time it takes for a laser pulse to travel to the target and back.").

**39.** *Hill v. State,* 830 So.2d 876, 877 (Fla. 5th DCA 2002); *Wallace v. State,* 814 So.2d 1255, 1257 (Fla. 5th DCA 2002).

**40.** 16 *Del. C.* § 4768(a).

Superior Court's judgments denying Harris's Motions for Judgments of Acquittal.

RIDGELY, Justice, concurring, with whom HOLLAND, Justice, joins:

I concur with the Majority in the reversal of Harris' Tampering with Physical Evidence conviction, but do so on a narrower basis. Section 1269(2) criminalizes the suppression of physical evidence by four alternative means. They are: a) concealment, b) alteration, c) destruction, or d) by employing force, intimidation or deception against any person.[41] The Indictment in this case charged Harris with Tampering with Physical Evidence by one means—by an "act of destruction." An "act of destruction" was a material allegation which the State was required to prove.[42] With no instruction requested by the State on the lesser included offense of Attempted Tampering with Physical Evidence, the only possible verdicts were guilty or not guilty of the offense charged.[43]

At trial, the State did not prove that physical evidence was suppressed by an act of destruction. Instead, the prosecutor argued for conviction under a concealment theory, stating "[Harris] was trying to conceal it, to swallow, so it could never be used against him." This argument acknowledged, consistent with the evidence, that when Harris placed the physical evidence into his mouth, he did not destroy either the baggie or its contents. Without proof of an act of destruction, Harris could not be convicted of the offense charged. Harris' motion for a judgment of acquittal on that offense should have been granted.

The Majority goes farther than necessary to decide this appeal and adopts the rationale of the New Jersey Superior Court in *State v. Fuqua*[44] to hold that, for possessory offenses, Section 1269 "applies only to completed crimes" because that rationale "comports with our statutory scheme, precedent, and fair public policy." Neither the Delaware statutory scheme nor our precedent supports the adoption of the *Fuqua* rationale. And although it may or may not be fair public policy, that is a determination for the General Assembly to make.

When interpreting a statute, our role is to determine and give effect to the intent of the General Assembly.[45] "In the absence of any ambiguity, the language of the statute must be regarded as conclusive of the General Assembly's intent."[46] "Under Delaware law, a statute is ambiguous if: first, it is reasonably susceptible to

---

41. 11 *Del. C.* § 1269 provides in relevant part: A person is guilty of tampering with physical evidence when:

         \* \* \*

(2) Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent its production or use, the person suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person.

42. See *Keller v. State*, 425 A.2d 152, 155 (Del. 1981).

43. Delaware follows the party autonomy rule which requires that "[t]he trial judge should not give an instruction on an uncharged lesser offense if neither side requests such an instruction because to do so would 'interfere with the trial strategies of the parties.'" *State v. Brower*, 971 A.2d 102, 107 (Del.2009) (quoting *State v. Cox*, 851 A.2d 1269, 1272 (Del.2003)).

44. *State v. Fuqua*, 303 N.J.Super. 40, 696 A.2d 44 (A.D., 1997).

45. *Ross v. State*, 990 A.2d 424, 2010 WL 625829 (Del. Feb. 23, 2010).

46. *State v. Cooper*, 575 A.2d 1074, 1076 (Del. 1990).

different conclusions or interpretations; or second, a literal interpretation of the words of the statute would lead to an absurd or unreasonable result that could not have been intended by the legislature."[47]

Contraband can satisfy the General Assembly's definition of physical evidence. "'Physical evidence' means any article, object, document, record or other thing of physical substance which is or is about to be produced or used as evidence in an official proceeding."[48] Whether a defendant has completed a possessory offense is irrelevant to the application of this definition. There need not be an actual official proceeding pending provided an official proceeding could readily have been contemplated under the circumstances of the case.[49]

Although the General Assembly could certainly provide an exception to Section 1269 for possessory crimes, it did not do so in the text of Section 1269. Also, there is no exception in 11 *Del. C.* § 531 which proscribes an attempt to violate Section 1269.[50] As a matter of law, Attempted Tampering with Physical Evidence is a lesser included offense of Section 1269.[51]

Thus, where a defendant believes that certain physical evidence (contraband or not) is about to be produced or used in an official proceeding or a prospective one, and he takes a substantial step towards committing the crime of tampering with physical evidence, with the intent of preventing its production or use, he is guilty of Attempted Tampering with Physical Evidence. A substantial step is "an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting."[52]

Nor is there an ambiguity in Section 1269 that supports limiting its application. A literal interpretation of the words of the statute does not lead to an absurd or unreasonable result that could not have been intended by our legislature. As the Majority has recognized, Tampering with Physical Evidence is itself a "serious crime."[53] The General Assembly proscribed tampering with physical evidence because "[p]hysical evidence is accorded great weight by triers of fact, so the dangers of a miscarriage of justice are multiplied when such evidence is fabricated or concealed."[54] The rationale of this statu-

---

**47.** *Leatherbury v. Greenspun,* 939 A.2d 1284, 1288 (Del.2007).

**48.** 11 *Del. C.* § 1274(2).

**49.** *See, e.g., People v. Nicholas,* 70 A.D.2d 804, 417 N.Y.S.2d 495 (1979) ("The moving of a body prior to an official proceeding being begun constituted tampering with physical evidence" because "a prospective official proceeding could readily be contemplated.").

**50.** 11 *Del. C.* § 531 provides:
A person is guilty of an attempt to commit a crime if the person:
(1) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
(2) Intentionally does or omits to do anything which, under the circumstances as

the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person.

**51.** *See* 11 *Del. C.* § 206(b)(2) ("A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when ... [i]t consists of an attempt to commit the offense charged or to commit an offense otherwise included there ....").

**52.** 11 *Del. C.* § 532.

**53.** Commentary, Delaware Criminal Code § 1269 (1973) at 378.

**54.** *Id.* Other offenses relating to judicial proceedings which are proscribed as felonies regardless of whether predicate criminal con-

tory scheme has more force, not less, when a defendant tampers with critical physical evidence such as contraband by attempting to destroy it.

I respectfully disagree with the Majority's focus on whether the police have control or constructive control over the contraband to transform the "item" into "evidence." In my view, the appropriate inquiry involves three elements which the State is required to prove beyond a reasonable doubt:

First, that on or about the date specified in the Indictment, the defendant suppressed physical evidence by an act of concealment, alteration, or destruction, or by employing force, intimidation or deception against any person;

Second, that the defendant did so believing that such physical evidence was about to be produced or used in an official proceeding or a prospective official proceeding; and

Third, that the defendant did so intending to prevent such production or use.[55]

duct is a misdemeanor include: Bribing a witness, 11 *Del. C.* § 1261, Tampering with a witness, 11 *Del. C.* § 1263, and Bribing a juror, 11 *Del. C.* § 1264.

**55.** *See* New York State Unified Court System, *Tampering with Physical Evidence,* http://www.courts.state.ny.us/cji/2-PenalLaw/215/215-40(2).pdf (last visited 4/1/10). In *Chance v. State,* 685 A.2d 351, 355 (Del.1996), we recognized that the Delaware Criminal Code is primarily based upon the New York Penal Code and the Model Penal Code.

**56.** 2005 WL 646841 (Del. Mar. 16, 2005).

**57.** 2007 WL 2696719 (Del. May 18, 2007).

**58.** 2004 WL 744188 (Del. Apr. 5, 2004).

**59.** 815 A.2d 730 (Del.2002).

**60.** 977 A.2d 800, 802 (Del.2009).

**61.** *Id.* at 801.

Our precedents have not focused on whether a completed possessory offense was involved. In *Pennewell v. State* we distinguished the cases of *Fletcher v. State,*[56] *Hardy v. State,*[57] *Anderson v. State*[58] and *Hunter v. State*[59] simply because "[e]ach of these fact patterns involved efforts to hide, or prevent discovery of, the evidence."[60] In *Pennewell,* we vacated the tampering with physical evidence conviction and held that the defendant dropping his drugs to the ground "did not amount to concealment because he did not attempt to hide the drugs or prevent their discovery. Rather, the defendant abandoned the drugs."[61] Abandonment is not criminalized by § 1269. Concealment with the requisite *mens rea* is criminalized, and, in *Hardy,* we upheld the tampering with physical evidence conviction when the defendant concealed contraband in his possession by placing it in his mouth.[62] Swallowing or destroying drugs in one's possession can also constitute a violation of § 1269.[63]

**62.** Unlike this case, the Indictment in *Hardy* charged the defendant with Tampering with Physical Evidence by "an act of concealment alteration *or* destruction." (emphasis added).

**63.** *See, e.g., State v. Mendez,* 345 N.J.Super. 498, 785 A.2d 945, 954 (A.D.2001) (holding a bag of suspected cocaine outside the window of a moving car during a police chase, allowing the substance to dissipate into the air is akin to "swallowing or flushing drugs down a toilet" and supports a conviction for Tampering with Physical Evidence); *Lewis v. State,* 56 S.W.3d 617 (Tex.Ct.App.) (swallowing of contraband during a traffic stop supports a conviction for Tampering with Physical Evidence); *State v. Logan,* 973 S.W.2d 279 (Tenn.Crim.App.1998) (placing bags containing cocaine in a toilet supports a conviction for Tampering with Physical Evidence); *Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003 (1996) (swallowing contraband after a policeman identified himself and ordered the defendant to "put your hand on

Finally, although it may or may not be "fair public policy" to limit the application of Section 1269 to possessory crimes which are completed, we have traditionally held that such a determination is for the General Assembly to make, not this Court.[64]

Turning to Harris' conviction on the charge of Possession of a Controlled Substance within 300 feet of a church, I agree with the Majority that there was no abuse of discretion in admitting evidence of the LIDAR distance measurement. The evidence was sufficient to enable a jury to find Harris guilty of the charge beyond a reasonable doubt.

For these reasons, I respectfully concur.

your head" supports a conviction for Tampering with Physical Evidence); *Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316 (1993) (flushing cocaine down a toilet after police announced their presence supports a conviction for Tampering with Physical Evidence); *Frayer v. People*, 684 P.2d 927 (Colo. 1984) (breaking a bottle of narcotic cough syrup during a struggle with police and in violation of the police order to "stop" supports a conviction for Tampering with Physical Evidence).

64. *In re Adoption of Swanson*, 623 A.2d 1095, 1099 (Del.1993).