E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5256

January 24, 2019

Benjamin S. Gifford, IV, Esquire
Law Office of Benjamin S. Gifford, IV
14 Ashley Place
Wilmington, DE 19804

Re: State of Delaware v. Maurice Land
Case No. 1408007675A

Dear Mr. Gifford:

I have granted your request and vacated and reissued my decision on Mr. Land's Motion for Postconviction Relief (see attached).

Very truly yours,

E. Scott Bradley

ESB/jwc
Enclosure

cc: Prothonotary
Casey Ewart, Deputy Attorney General

FILED PROTHONOTARY
SUSSEX COUNTY
2019 JAN 24 P 12: 18

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5256

January 24, 2019

Benjamin S. Gifford IV, Esquire
The Law Office of Benjamin S.
Gifford, IV
14 Ashley Place
Wilmington, DE 19804

Casey L. Ewart, Esquire
Deputy Attorney General
Department of Justice
114 East Market Street
Georgetown, DE 19947

RE:   *State of Delaware v. Maurice Land*
      **ID # 1408007675A**

Date Submitted: October 1, 2018

Dear Counsel:

This is my decision on Defendant Maurice Land's timely-filed Amended

Motion for Postconviction Relief. Land was convicted of Robbery in the First

Degree, Possession of a Firearm During the Commission of a Felony, Conspiracy

in the Second Degree, Tampering with Physical Evidence, Resisting Arrest, and

Theft under $1000. The convictions arose out of Land's robbery of a store

employee at the Dollar General store in Georgetown, Delaware. I sentenced Land

to serve 55 years and six months at Level 5, suspended after serving 51 years and

six months at Level 5 for one year of probation on December 11, 2015. The Supreme Court affirmed Land's convictions on January 10, 2017.[1]

## STATEMENT OF THE FACTS

Land's convictions arose out of an armed robbery of the Dollar General store in Georgetown, Delaware. On August 9, 2014, an employee of the Dollar General store in Georgetown, Delaware was taking a register till to her office shortly before 9:00 p.m. As she entered her office, a man wearing a black hat and a t-shirt that said "Security" on the back approached her in her office while displaying a black handgun. He ordered her to give him the money from the register till she had and another till that was in the office. After she did so, he told her to get on the ground. The man then exited the store and the employee called the police.

Shortly after the robbery occurred, Corporal Joel Diaz of the Georgetown Police Department observed three black males run across the street. Corporal Diaz testified that his attention was initially drawn to the men because a series of robberies had taken place in the area. As Corporal Diaz continued to observe the men, a call came over his radio that a robbery had taken place at the Dollar General store, which was a quarter of a mile away from his location. The radio

---

[1] *Land v. State*, 154 A.3d 590 (Del. 2017) (Table).

2

call described the suspect as a black male dressed in all black and possibly armed with a handgun. Corporal Diaz realized that one of the three men that he was observing was dressed in all black. The officer approached the men, rolled down his window and asked them to stop. At first, the men ignored him, but when Corporal Diaz stopped and exited his vehicle, one of the men later identified as Christopher Clay, ran. Corporal Diaz radioed to other officers to pursue Clay and ordered the other two men, later identified as Maurice C. Land and Booker T. Martin, to stop.

Corporal Diaz and another Georgetown Police officer, Officer Derrick Calloway, were eventually able to detain Land and Martin. As Land was getting on the ground, he removed his shirt, which was black with "Security" written across the back in yellow letters. The officers also found a black baseball cap on the sidewalk near where Land had been standing. At the time of his arrest, Land had a latex glove and $81 in cash on his person. Martin had $897 in cash in his pocket in three bundles that were folded and organized by denomination.

While Corporal Diaz and Officer Calloway were with Land and Martin, Officer John Wilson was responding to Corporal Diaz's call to pursue Clay. Officer Wilson saw Clay running in the opposite direction of his car. He exited

3

the vehicle and began chasing Clay on foot. Clay continued to run, and Officer Wilson observed him raise his hand into the air. Officer Wilson testified:

> I didn't know if [Clay] was going to run like he was going to turn or if he was throwing something. And I thought - I did think I saw something leave his hand, but the lights are - it was dark; my overheads on my police car are on; everything's flashing.

Clay eventually got into a parked vehicle, and Officer Wilson ordered him out of the vehicle at gunpoint. Clay had $280 in cash in his pocket, folded and organized by denomination, and $1.17 in change. Officers later recovered a black handgun on the opposite side of a fence near where Officer Wilson observed Clay making a throwing motion.

Security footage from the Dollar General store showed Clay entering the store with Land shortly before 9:00 p.m. Land went to the back of the store and into the office, where surveillance cameras recorded him putting on a clear glove and taking money out of an employee's wallet. When the employee entered the office, Land pointed a handgun at her and demanded the money from the register tills. He then made her get on the ground, and he left the office. As Land was in the back of the store, Clay placed several items on the counter. Four seconds after Land left the store, Clay followed without purchasing any of those items.[2]

---

[2] All of the above facts were taken verbatim from the Supreme Court's decision in *Clay v. State*, 164 A.3d 907, 911-12 (Del. 2017).

A joint trial for Land and his co-defendants was held. All three of the defendants were subsequently convicted at trial. Martin's convictions, except for a misdemeanor Resisting Arrest charge, were later vacated and dismissed pursuant to a post-trial Motion for Judgment of Acquittal.

## DISCUSSION

This is Land's first motion for postconviction relief and it was filed in a timely manner. Land argues that his trial counsel was ineffective. Land's trial counsel and the State have filed affidavits in response to Land's allegations. Land argues that his trial counsel was ineffective because he (1) failed to file a motion to sever his trial from that of his co-defendants, (2) unwisely presented evidence to the jury of robberies committed in Baltimore, Maryland with a similar modus operandi, and (3) failed to argue on appeal that the trial court erred in denying his motion for judgment of acquittal as to his conviction for Tampering with Physical Evidence. Land submitted four different arguments in his *pro se* motion for postconviction relief. I then appointed postconviction counsel for Land. Land's postconviction counsel did not advance any of them. Therefore, I have considered Land's four *pro se* arguments to be abandoned. The United States Supreme Court has established the proper inquiry to be made by courts when deciding a motion

5

for postconviction relief.[3] In order to prevail on a claim for ineffective assistance of counsel pursuant to Superior Court Criminal Rule 61, the defendant must engage in a two-part analysis.[4] First, the defendant must show that counsel's performance was deficient and fell below an objective standard of reasonableness.[5] Second, the defendant must show that the deficient performance prejudiced the defense.[6] Further, a defendant "must make and substantiate concrete allegations of actual prejudice or risk summary dismissal."[7]

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome."[8] To establish a reasonable probability of a different result, the defendant needs to "show a 'probability sufficient to undermine the confidence in the outcome,' a standard lower than 'more likely than

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

[4] *Strickland*, 466 U.S. at 687.

[5] *Id.* at 687.

[6] *Id.* at 687.

[7] *State v. Coleman*, 2003 WL 22092724 (Del. Super. Feb. 19, 2003).

[8] *Strickland*, at 694.

6

not."[9] Moreover, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[10] It is also necessary that the defendant "rebut a 'strong presumption' that trial counsel's representation fell within the 'wide range of reasonable professional assistance,' and this Court must eliminate from its consideration the 'distorting effects of hindsight when viewing that representation.'"[11]

## I. Motion to Sever

Land argues that his trial counsel was ineffective because he did not file a motion to sever his trial from that of his co-defendants. Land argues that once it became apparent pre-trial that Clay and Martin would deny involvement in the robbery and claim that Land had acted alone, trial counsel should have moved to have Land's trial severed so that he would not have to fend off both the prosecutor and counsel for his co-defendants. Land argues that this failure allowed his co-defendants to ask questions during the trial that placed the blame solely on him and to argue that Land committed the robbery alone. Land also argues that his

---

[9] *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013).

[10] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686).

[11] *Coleman*, 2003 WL at *2, *quoting Strickland*, 466 U.S. at 689.

7

trial counsel should have moved for a mistrial when counsel for his co-defendants did this. And finally, Land argues that his trial counsel was ineffective for failing to object to the jury instructions because they were framed in a manner that presented Land as a principal in committing the robbery and his co-defendants as accomplices.

In response to Land's allegations, trial counsel stated two reasons for not seeking severance. One, trial counsel stated that he did not request to have Land's case severed from that of his co-defendants because he did not think that his request would be granted. Trial counsel stated that he was aware that Land's co-defendants had moved to have their trials severed and the Court had denied those motions. Trial counsel stated that he had no reason to believe that a similar motion for Land would be decided any differently. Trial counsel noted that only one of the four factors considered for severance had any application. That factor was the possibility of Land and his co-defendants having antagonistic defenses. Trial counsel stated further that he was aware that Land's co-defendants would be pursuing a defense that they were not responsible for the robbery, and that it was the person in the "security" shirt that was responsible. Trial counsel reasoned that the co-defendant's defense was not directly contradictory to Land's defense because Land's defense was that it was not him on the video in the "security"

8

shirt. Therefore, according to trial counsel, the jury was not in a position where it had to either accept Land's defense or the defenses of Martin and Booker. Quite simply, trial counsel believed that the jury could have both believed that it was not Land who committed the robbery and that the co-defendants also had nothing to do with the robbery. Two, trial counsel stated his reason for not seeking severance was strategic because it furthered his defense. Land's defense was that he was not the person on the video. Trial counsel reasoned that his defense was furthered by the co-defendants arguing that he was not part of their team. Trial counsel believed it helped Land's defense of "wrong place, wrong time" because the co-defendants were caught with most of the money and the gun and he was not.

Superior Court Criminal Rule 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." The Delaware Supreme Court set forth four factors that a trial court should consider when determining whether to sever defendants: "(1) problems involving a co-defendant's extra-judicial statements; (2) an absence of substantial independent competent evidence of the movant's guilt; (3) antagonistic

9

defenses as between the co-defendant and the movant; and (4) difficulty in segregating the State's evidence as between the co-defendant and the movant."[12] I would not have granted a Motion to Sever if trial counsel had filed one because those factors do not favor severance.

1. Problems Involving a Co-Defendant's Extra-Judicial Statements

This was not a factor favoring severance because there were no such statements.

2. An Absence of Substantial Independent Competent Evidence of the Movant's Guilt

This was not a factor because there was a considerable amount of substantial independent competent evidence of Land's guilt. Indeed, the evidence of Land's guilt was overwhelming. Land was captured on the store video robbing the store employee. The store employee identified Land at trial as the person who robbed her. Land was seen running away with his co-defendants only minutes after he committed the robbery. Land was captured wearing the same shirt, hat and glasses that he was wearing in the store video. Land's co-defendants were captured with the gun Land used and the money that he stole. Quite frankly, the same evidence would have come in against Land whether or not his trial was

---

[12] *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999).

10

severed from that of his co-defendants. This was an armed robbery with three defendants. Land actually committed the robbery. Clay was the in-store lookout. Martin was the out-of-store lookout. Land and Martin were seen together on the video. All there men were seen running away from the store only minutes after the robbery was committed and were found wearing the same clothes and with the gun and stolen money.

3. Antagonistic Defenses as Between the Co-Defendants and the Movant

The defenses were somewhat antagonistic. This is typical where some co-conspirators play a greater role in a conspiracy than others. However, if that alone were a reason to try each co-conspirator separately, then we would never see a trial with all co-conspirators tried at once. We see many of these trials and we see them because it makes sense to present all of the evidence at one time against all of the conspirators and because there is no unfair prejudice to the conspirators in doing so. Moreover, trying Land with his two co-defendants was hardly as awful for Land as he makes it out. As I stated earlier, all of the evidence in this case was going to come in against Land even if he was tried separately because that is the only way to accurately and faithfully present what happened. It was particularly important to show that Land was arrested with Clay and Martin, who had the gun

11

that Land used and the money that he stole. Thus, severance was not going to eliminate the evidence of the roles played by Clay and Martin. Lastly, the defense of all three defendants was that they did not do it. Martin argued that he was not seen on the video at all. Clay argued he was not seen on the video doing anything other than walking into the store and leaving the store around the same time that Land did. Of course, as part of their defense, Martin and Clay argued that it was Land who actually committed the robbery. In doing this, all they did was argue what was obvious. Land was the one who actually robbed the store employee. The other two were just lookouts. There is nothing earth shattering about the questions and arguments raised by Martin and Clay. Thus, while the defenses were somewhat antagonistic, they were nothing more than the usual attempts by co-conspirators to minimize their roles. "[T]he presence of hostility between a defendant and his co-defendant or 'mere inconsistencies in defenses or trial strategies' do not require a severance."[13] In *Bradley v. State*, the Court held that a defendant is entitled to severance when the jury can reasonably accept the core of the defense offered by either the defendant only if it rejects the core of the defense

---

[13] *Phillips v. State*, 154 A.3d 1146, 1157 (Del. 2017).

12

offered by his co-defendants.[14]  Such was not the case here.

### 4. Difficulty In Separating the State's Evidence As Between The Co-Defendants and The Movant

This was not a factor because there was no trouble at all in clearly establishing each conspirator's role.  Land committed the robbery.  That was captured on the video.  Clay was the in-store lookout.  That was captured on the video.  Martin was the out-of-store lookout.  That was inferred because Martin was seen running away after the robbery with Land and Clay and was found with much of the stolen money.  Moreover, as I stated before, all of the evidence was going to come in against Land even if he was tried separately.  Such is the case with conspiracies and it was particularly important in this case because the gun that Land used and the money he stole were found with Clay and Martin, as was Land.

Thus, when you consider all the factor's together, there was no reason to sever Land's trial from that of Clay and Martin.  Land argues that his trial counsel should have moved for a mistrial after counsel for his co-defendants tried to place all of the blame on him by asking questions that established that the co-defendants did not actually commit the robbery.  There is nothing to this argument.  It merely

---

[14] *Manley v. State*, 709 A.2d 643, 652 (Del. 1998), citing *Bradley v. State*, 559 A.2d 1234, 1241 (Del. 1989).

13

points out, as I noted earlier, the obvious. Land actually committed the robbery. Clay and Martin were just lookouts. There is nothing startling about this. Indeed, it is the nature of conspiracies. Some co-conspirators almost always do more than others. Land's argument also ignores the fact that Clay and Martin were arrested with the gun that Land used and the money that he stole. There was no basis for a mistrial simply because Clay and Martin tried to shift blame for the robbery by minimizing their roles and maximizing Land's role. The fact that Clay and Martin were found with the gun and money puts their arguments in the appropriate context and allowed the jury to evaluate them for what they were worth, which was nothing because the jury found them guilty as co-conspirators. As to the jury instructions, Land has no basis to complain. Jury instructions should reflect the evidence. They did so in this case. Land was clearly the principal. Land actually committed the robbery. Clay and Martin were lookouts. They were clearly accomplices. Jury instructions framed any other way would not have made sense.

The joint trial did not compromise any specific right of any of the defendants and it did not prevent the jury from making a reliable judgment about the guilt or innocence of each defendant. The jury did not have difficulty segregating the evidence. In fact, the evidence of the robbery was on video and it was overwhelming. The surveillance video showed a black male wearing a black

14

hat and a black shirt with "security" written across the back rob a Dollar General employee in the back office. When Land was arrested he was caught attempting to shed the black shirt with "security" written across the back. The police also discovered a black hat near where Land was arrested.

Martin was never seen on the surveillance video. Clay was seen on the surveillance video, but was not with Land in the back office where the robbery was occurring. Clay was later observed throwing the gun over the fence while being chased by a police officer. Clay was found with $280 in cash in his pocket. Martin was found with $897 in cash in his pocket. While Dollar General could not provide an exact amount of money that was taken, it approximated the amount found on Clay and Martin. The defenses of Clay and Martin were that they did not rob the Dollar General store, but that it was the person wearing a black shirt with "security" written across the back, as supported by the video. Land's defense was that it was not him, and that he was simply in the wrong place at the wrong time wearing the wrong shirt. Additionally, Land was not in possession of the gun or the proceeds of the robbery. These are only mildly antagonistic defenses. Even if, *assuming arguendo*, that the defenses of the three co-defendants were at least

15

partially at odds, those tensions did not rise to the level of mutually exclusive defenses that require severance.[15]

I note that trial counsel is not required to file motions that clearly would be without merit and would reasonably be denied.[16] Nothing in the evidence or in Land's motion hints of a possibility that the motion to sever would have been granted. Additionally, trial counsel was aware that severance had already been denied for Land's co-defendants, and he had no reason to think another motion would be decided any differently. Land and his co-defendants were properly tried together under Rule 8(b). Although Land asserts that there are several antagonistic defenses and statements, that does not make it so. The State pursued a conspiracy theory making each defendant responsible for the actions of his co-defendants.[17] Trying to sever the trials would not have made a difference. The facts are what they are. Land was the primary actor, and Martin and Clay were the accomplices. As such, it was proper to try them together. Trial counsel was not ineffective for failing to file a motion to sever.

---

[15] Compare with *Bradley v. State*, 559 A.2d 1234, 1241-42 (Del. 1989) (finding an abuse of discretion where the Superior Court did not sever a trial where the co-defendants repeatedly attempted to directly incriminate each other both by direct testimony and calling witnesses who claimed that one defendant or the other had confessed the crime to the witness).

[16] *Nichols v. State*, 768 A.2d 470 (Del. 2001).

[17] See 11 *Del.C.* § 512 and 11 *Del.C.* § 272.

16

Morever, even if Land had been tried separately it would not have made any difference. All of the evidence that came into the joint trial would have come into Land's trial even if he had been tried alone. That evidence was substantial. Land was seen on video committing the robbery. The store employee that Land robbed identified Land as the man who robbed her at trial.[18] Land was arrested with two other men with the gun Land used and the money he took. The only thing that would not have been there were counsel for Clay and Martin, who did nothing more than state the obvious at Land's trial - they were not the ones who actually committed the robbery. The evidence against Land was overwhelming. A separate trial for him would have made no difference. That overwhelming evidence would have still been there. This allegation is without merit.

## II. The Baltimore, Maryland Robberies

Land argues that trial counsel was ineffective for eliciting testimony about a string of robberies that occurred in Baltimore. There were apparently a number of robberies of stores in Baltimore committed in a similar fashion by a black man wearing a shirt with the word "security" on it. Land argues that this was unwise because the jury believed that he committed those offenses and the Dollar General robbery as well.

---

[18]Trial Tr. Vol. A, 124, Oct. 12, 2015.

Trial counsel contends that had the facts of this case been different he would not have pursued this course of questioning, and in fact would have objected to any testimony regarding the Baltimore robberies. Trial counsel stated that he pursued this specific line of questioning because the only plausible defense available to Land was that it was not him on the surveillance video and that he just happened to be in the same area at the same time wearing the same shirt as the person who robbed the Dollar General store. Trial counsel believed that evidence of similar robberies being committed by someone else in Baltimore could go a long way in supporting this defense. It would, according to trial counsel, allow Land to point to someone else as the robber. Furthermore, trial counsel stated he discussed with Land the risk that the jurors could infer that Land also committed the Baltimore robberies. Land agreed to that strategy. That risk did not come to fruition because a Dollar General security employee testified that the suspect in the Baltimore robberies was not Land.[19] Thus, Land was able to argue that he was not the one that robbed the Dollar General store. Trial counsel's performance was not deficient and it did not fall below an objective standard of reasonableness.

The evidence on the Dollar General surveillance video showed the robber wearing a black shirt with "security" written on it. Land's contention that the

---

[19]Trial Tr. Vol. B, 79-80, Oct. 13, 2015.

18

person in the video was not him. In an effort to bolster Land's defense, trial counsel introduced a line of questioning that suggested a similar string of robberies that occurred in Baltimore by a person wearing a black shirt. Ultimately, it was shown that Land was not the person that committed the robberies in Baltimore. Logically, the line of thinking was that if someone else was robbing stores in Baltimore in a similar fashion and it was proven that Land was not that person, then doubt could be raised that it was not Land on the Dollar General surveillance video. This was a relevant line of questioning, and Land suffered no prejudice because of it. Quite simply, it was just an effort that could not overcome the overwhelming evidence against Land for the Dollar General store robbery. This allegation is without merit.

## III. Tampering With Physical Evidence

Land argues that trial counsel was ineffective because he failed to raise more than one issue on appeal. Land argues that trial counsel should have argued that the trial court erred in denying Land's motion for judgment of acquittal as to the Tampering with Physical Evidence charge. In *Harris v. State*, the Supreme Court stated, "11 *Del.C.* § 1269 criminalizes neither inchoate tampering nor tampering with items, but, rather, successful suppression of evidence. Where evidence is immediately retrievable by the police, an individual has failed to

19

actually suppress the evidence, and is therefore not guilty of tampering under §1269."[20] In support of his argument, Land cites to co-defendant Clay's appeal before the Supreme Court. In *Clay v. State*, the Supreme Court found that the gun was immediately retrievable because Officer Wilson perceived Clay's act of suppression, thereby negating the charge of Tampering with Physical Evidence.[21] With respect to Land, the State argued that he attempted to conceal the gun, the proceeds from the robbery, and the "security" shirt.

Land argues that his trial counsel should have raised the issue of Tampering with Physical Evidence on appeal. Trial counsel does not recall why he did not raise the issue on appeal. Trial counsel stated that Land was 58 years old at the time of sentencing when he was sentenced to over 50 years in jail. Trial counsel believes the reason he did not focus on the tampering charge was that he was attempting to provide some tangible relief to Land for the lengthy sentence he faced.

The Court notes that Land's tampering actions were different than that of his co-defendants. Land was caught on camera with a gun and taking a significant amount of money from a Dollar General store employee. When he was arrested,

---

[20] 991 A.2d 1135, 1138 (Del. 2010).

[21] 164 A.3d 907, 915 (Del. 2017).

20

Land had neither the gun nor the proceeds of the robbery on his person. Instead, the money was found on both Martin and Clay and Clay had possession of the gun. The State's argument focused on the fact that Land handed off the proceeds of the robbery and the gun to his co-defendants and at that point the "act of suppression" was completed. As for the shirt, Land unsuccessfully attempted to rid himself of it when he was arrested. The Court would agree with Land that the attempted disposal of the shirt could not form the basis of a tampering with physical evidence charge, but it was not the sole piece of evidence the State alleged he tampered with.

Tampering with Physical Evidence is a Class G felony carrying a possible sentence of 0 to 2 years at Level 5. For this particular count, this Court sentenced Land to 2 years at Level 5, suspended for 1 year at concurrent Level 3 probation. It is obvious to see why trial counsel focused on Land's constitutional right to a speedy trial and not on a low-level felony. If trial counsel was successful in the appeal, Land would not be incarcerated. As for the Tampering with Physical Evidence conviction, the State is correct. The police did not perceive any attempted act of suppression on the money or the gun committed by Land. At the time of his arrest, Land had already suppressed the money and the gun by passing them off to his co-defendants. If the sole piece of evidence alleged to be tampered

21

with was the "security" shirt, Land would be correct that the evidence would not support the conviction, but that is not the case. Trial counsel was not ineffective in his failure to raise this allegation. This allegation is without merit.

## CONCLUSION

Maurice Land's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED**.[22]

Very truly yours,

E. Scott Bradley

ESB:tll/jwc

cc:   Prothonotary's Office
      Stephen W. Welsh, Esquire

FILED PROTHONOTARY SUSSEX COUNTY 2019 JAN 24 P 12: 18

---

[22]   I have vacated my decision dated November 14, 2018, denying Defendant Maurice Land's Motion for Postconviction Relief and reissued it this date, January 24, 2019, so that Mr. Land may pursue a timely-appeal to the Supreme Court.

22