# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NANCY GREEN, Individually and On Behalf of all Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2020-0989-SG |
| CARL M. FREEMAN COMMUNITIES L.L.C., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 4, 2021
Date Decided: May 19, 2021

Robert J. Valihura, of MORTON, VALIHURA & ZERBATO, LLC, Greenville, Delaware, *Attorneys for Plaintiff Nancy Green*.

Mark F. Dunkle, of PARKOWSKI, GUERKE & SWAYZE, P.A., Rehoboth Beach, Delaware, *Attorneys for Defendant Carl M. Freeman Communities, L.L.C.*

**GLASSCOCK, Vice Chancellor**

This post-trial Memorandum Opinion[1] addresses who rightfully controls Bayside Community Association, Inc. (the "Association"), the unit owners' association for Bayside, a Delaware common interest community (the "Community" or "Bayside").[2] The Defendant, Carl M. Freeman Communities, L.L.C.,[3] is both the developer of the Community and the current controller of the Association's board of directors, and, therefore, the Association. [4] The Plaintiff is a homeowner.[5] This matter is before me on a stipulated record.

Unit owners' associations are required under the Delaware Uniform Common Interest Ownership Act ("DUCIOA") for all common interest communities.[6] These associations have broad authority over the common property of the development, including levy of assessments for "common expenses."[7] The Plaintiff alleges that, under § 81-303 of the Act,[8] the Defendant was required to cede its control of the Association to the homeowners when 75% of "the units that may be created"[9] in the

---

[1] The facts of this post-trial opinion are drawn from exhibits jointly submitted and attached to the Defendant's trial brief. Each page of each exhibit is numbered "JA _____" and I refer to them according to their page numbers.
[2] Am. Compl. ¶ 1, Dkt. No. 8 [hereinafter "Compl."]; Answer and CounterCl. ¶ 1, Dkt. No. 17 [hereinafter "Answer"].
[3] Compl. ¶ 2; Answer ¶ 2.
[4] Compl. ¶ 1; Answer ¶ 1.
[5] Compl. ¶ 1; Answer ¶ 1.
[6] 25 *Del. C.* § 81-301.
[7] *See* 25 *Del. C.* § 81-302(a).
[8] 25 *Del. C.* § 81-303.
[9] *Id.*

Community were sold.[10]  The Defendant, in turn, points to an exception in § 81-303 for master planned communities; that exception permits such communities to designate, in their Declarations,[11] when control must be handed over.[12]  Per the Defendant, Bayside is such a master planned community and, accordingly, its charter—which allows the developer to control the Association until 90% of units have been sold[13]—is determinative of when the developer's control must terminate.[14]  The Plaintiff does not contend that Bayside has crossed the 90% threshold.[15]  Further, the Defendant argues, even if Bayside is not a master planned community and the exception does not apply, 75% of "the units that may be created" have not yet been sold.

In summary, the parties dispute two issues: (1) whether Bayside falls into § 81-303's exception for master planned communities, and (2) if it does not, what is the meaning of the term "units that may be created"—*i.e.*, the denominator of the

---

[10] Pl.'s Trial Br. 2–3, Dkt. No. 33.  To be precise, the transfer must occur within "60 days after conveyance of 75 percent of the units that may be created to unit owners other than a declarant." 25 *Del. C.* § 81-303(c)(i).

[11] According to 25 *Del. C.* § 81-103, a "'Declaration' means the recorded instruments, however denominated, that create a common interest community, including any amendments to those interests."  The parties do not dispute that Bayside's Original Charter, and its 2021 Amended Charter, constitute a "Declaration" under § 81-103.  JA 0884–JA 1036.

[12] 25 *Del. C.* §§ 81-303, 81-223(g).

[13] Or until December 31, 2024, whichever occurs first.

[14] Def.'s Trial Br. 10, Dkt. No. 32.

[15] *See* Pl.'s Trial Br. 3, Dkt. No. 33 (arguing that 1,221 out of 1,451 "units" creatable units have been sold, which is about 84%).  The parties do not dispute that 1,221 units have been sold; their dispute is limited to the denominator—*i.e.*, the number of "units that may be created." *Id.*; Def.'s Trial Br. 5, Dkt. No. 32; *see* 25 *Del. C.* § 81-303.

3

75% calculation. I find that Bayside is a master planned community under DUCIOA and so it is subject to § 81-303's exception. My reasoning follows.

## I. THE RELEVANT STATUTORY AND CHARTER PROVISIONS

DUCIOA provides that unit-holders' associations must be created, and may be controlled by the developer—the "declarant" in the language of the statute—for a period after units begin to be sold. The statute relied upon by the Plaintiff, 25 *Del. C.* § 81-303(c), provides in relevant part that:

> the declaration may provide for a period of declarant control of the association, during which a declarant . . . may appoint and remove the officers and members of the executive board. Regardless of the period provided in the declaration, and except as provided in § 81-223(g) of this title, a period of declarant control terminates no later than the earlier of: (i) . . . 60 days after conveyance of 75 percent of the units that may be created to unit owners other than a declarant . . . .

As the reader may surmise, the exception in § 81-303 that the Defendant relies upon is that for 25 *Del. C.* § 81-223(g), which is a subsection of the master planned community statute within DUCIOA.[16] That provision provides:

> [t]he period of declarant control of the association for a master planned community terminates in accordance with any conditions specified in the declaration or otherwise at the time the declarant, in a recorded instrument and after giving written notice to all the unit owners, voluntarily surrenders all rights to control the activities of the association.

---

[16] 25 *Del. C.* § 81-223 is titled "Master planning communities."

4

In other words, for a master planned community, the declaration controls the timing of the homeowners' association handoff; for all other communities to which DUCIOA applies, the 75% rule controls.

The term "Master Planned Community" is not defined in DUCIOA's definitions section, § 81-103.[17]  It is, however, described in 25 *Del. C.* § 81-223 itself.  Subsection (a) of that statute provides that:

> The declaration for a common interest community may state that it is a master planned community if the declarant has reserved the development right to create at least 400 units that may be used for residential purposes, and at the time of the reservation that declarant owns or controls more than 400 acres on which the units may be built.[18]

Subsection (a) accordingly provides two requirements for a community to be considered a "master planned community" under DUCIOA: (1) it must meet a certain size requirement of "at least 400 units" on "more than 400 acres", and (2) the developer must declare master planned community status via a statement in the community's declaration.[19]  In other words, the developer may elect master planned community status for her large common interest community by so stating in the community declaration.  The declaration itself must be recorded in the county in which the community exists, in the chain of title.[20]

---

[17] 25 *Del. C.* § 81-103.
[18] 25 *Del. C.* § 81-223(a)
[19] *Id.*
[20] 25 *Del. C.* § 81-201.

Bayside's declaration is its community charter. The Original Bayside Community Charter (the "Charter") was executed on February 22, 2005.[21] It provides in the Preamble that Bayside is "a mixed-use master planned community."[22] It further provides, in Section 16.3, entitled "Changes in Master Plan," that "[e]ach Owner acknowledges that Bayside is a master planned community, the development of which is likely to extend over many years."[23] Accordingly, the Charter satisfies § 81-223(a)'s requirement that the declaration state that the Community is a master planned community. The parties do not dispute that Bayside also meets § 81-223(a)'s size requirement.

Bayside's Charter also includes terms dictating when control of the Association must be relinquished by the Defendant to the homeowners. In Section 3.1, the Charter provides that the Defendant "is entitled to appoint a majority of the members of the Association's board of directors" until the earlier of:

> (a) when 90% of the total number of Units permitted by the Master Plan have certificates of occupancy issued thereon and have been conveyed to Persons other than builders holding title for purposes of construction and resale;
>
> (b) December 31, 2024; or
>
> (c) when, in its discretion, the Founder so determines and declares in a recorded instrument.[24]

---

[21] JA 0884–0965.
[22] JA 0892.
[23] JA 0945.
[24] JA 0899.

## II. ANALYSIS

The two issues contested here are sequential. First, I must determine whether Bayside is a master planned community. If it is, it falls into § 81-303's exception for master planned communities and is not subject to the 75% control-turnover threshold. Instead, prior to the end of 2024, control of the Association need only be handed over when the Charter so dictates—*i.e.*, if 90% of the total units permitted by Bayside's Master Plan have been sold. Neither party disputes that Bayside has not yet met that 90% threshold. Thus, if I determine that Bayside is a master planned community, the inquiry ends. If, on the other hand, I determine Bayside is not a master planned community, then it is subject to § 81-303's requirements that control be terminated upon sale of 75% of "the units that may be created" in the Community. In that case, I must determine whether 75% of "the units that may be created" have indeed been sold.

I find that Bayside is a master planned community under the meaning promulgated in DUCIOA. "The role of the judiciary in interpreting a statute is to determine and give effect to the legislature's intent."[25] That intent is "reflected by unambiguous language."[26]

---

[25] *Ross v. State*, 990 A.2d 424, 428 (Del. 2010).
[26] *Id.*

7

As noted above, the term "Master Planned Community" is not defined in DUCIOA's definitions section, § 81-103. But DUCIOA has an entire section dedicated to master planned communities—Section 81-223, which is titled eponymously. The very first subsection of § 81-223 provides that a community "may state that it is a master planned community" if it meets a certain size requirement. Bayside meets that size requirement. Accordingly, it may state—and indeed, it does so state—in its Charter that it is a master planned community. That is all the statute requires for election of master planned community status.

The Plaintiff argues that, Charter notwithstanding, Bayside has failed to comply with other provisions of § 81-223, and therefore should not be considered a master planned community. But this argument is, to my mind, unavailing. To the extent the Plaintiff is arguing that the Defendant and the Community have *waived* the Community's designation as a master planned community and the benefits flowing therefrom, the Plaintiff has not shown that any purported waiver was clear and intentional.[27] Noncompliance with other subsections of § 81-223 does not constitute clear and intentional waiver of the right to be considered a master planned

---

[27] It is well-settled that "waiver of a party's rights is permitted, but must be clear." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 2019 WL 3814453, at *4, *4 n.29 (Del. Ch. Aug. 14, 2019). That applies to both statutory and contractual rights. *Hirzel v. Silker*, 156 A. 360, 362 (Del. 1930) ("[A]ll rights or privileges to which a person is legally entitled, which rest in the individual and are intended for his sole benefit, may be waived[,] whether such rights are secured by contract[] or conferred by statute. . . . But this intention to waive one's rights and privileges must be clearly shown.").

community, and nowhere in the statute's text is the master planned community designation made contingent upon compliance with all of § 81-223's subsections. Next, I note that the Plaintiff has not argued estoppel, nor do the facts support the elements of equitable estoppel here.[28] As the master planned community designation has not been waived, all the Plaintiff's argument can mean is that Bayside may be out of compliance with DUCIOA. That noncompliance may lead to consequences, but such consequences do not include a deprivation of the right provided for in § 81-223(g).

The Plaintiff argues that providing Bayside with § 81-223(g) exemption when it has not complied with other subsections of § 81-223 is unfair and "inequitably surprises" buyers of Bayside units with application of the exemption "after the homeowners [have] asserted their rights."[29] In other words, according to the Plaintiff, homeowners of Bayside are not adequately put on notice that Bayside homes are subject to § 81-223(g). This, per Plaintiff, is the very notice right that the

---

[28] *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005) ("The doctrine of equitable estoppel is invoked when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment. The party claiming estoppel must demonstrate that: (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) they suffered a prejudicial change of position as a result of their reliance. Equitable estoppel has been applied in the corporate context where, for example, a stockholder, with knowledge of the facts, consents or acquiesces in the acts of directors or other corporate officers. Regardless of the form of the action, the burden of proof of estoppel rests upon the party asserting it. Furthermore, equitable estoppel must be proven by clear and convincing evidence; [a]n estoppel may not rest upon an inference that is merely one of several possible inferences." (internal quotations omitted)), *aff'd*, 884 A.2d 512 (Del. 2005).
[29] Pl.'s Trial Br. 35, Dkt. No. 33.

balance of § 81-223 protects. That is a questionable assertion, in my view—I tend to read the section as relaxing certain notice requirements, assuming master planned community status is included in the Charter. But assuming that the Plaintiff is correct, her argument is unavailing, because the argument that unit owners were not on notice of Bayside being a master planned community, or of the contractual conditions for ceding Association control, is not consistent with the evidence. Bayside's *original* charter, recorded with the Register of Deeds, was executed in 2005;[30] it included a statement that Bayside is a master planned community,[31] a statement that "[e]ach Owner acknowledges that Bayside is a master planned community,"[32] and also expressly provides for a 90% control turnover threshold.[33]

DUCIOA, including § 81-223, was enacted in 2008.[34] Thus, the homeowners of Bayside should have been aware, well before DUCIOA was passed, that Bayside was a master planned community and, after the law's enactment, that § 81-223(g) applied. The Plaintiff rests her lack-of-notice argument on the fact that Bayside does not "make the required disclosures or offer the public offering statement" that is required in § 81-223(f).[35] Even if that is correct, notice is

---

[30] JA 0965.
[31] JA 0892
[32] JA 0945.
[33] JA 0899.
[34] Del. Code Ann. tit. 25, § 81-101 (West); Del. Code Ann. tit. 25, § 81-223 (West).
[35] Pl.'s Trial Br. 34, 34n.18, Dkt. No. 33.

10

adequately provided in Bayside's Charter, public offering statement notwithstanding.

Finally, the Plaintiff argues that § 81-223 does not apply to Bayside because that section is *forward-looking-only* and Bayside predates DUCIOA. The Plaintiff points to § 81-119, entitled "Applicability to preexisting common interest communities and approved common interest communities."[36] That section provides a laundry list of sections of DUCIOA that "apply to all common interest communities . . . created in this State before the effective date" of DUCIOA, "but those sections apply *only with respect to events and circumstances occurring after the effective date* and *do not invalidate* existing previsions of the declaration . . . that do not conflict with this chapter."[37] It also provides that "[a]ny preexisting common interest community . . . has the right to amend its declaration . . . to comply with any *or all* of the requirements of this chapter, or . . . [it] may select particular additional sections of this chapter to apply to that community without adopting the entire chapter."[38] Section 81-223 does not appear in the list of sections that "apply to all common interest communities . . . created . . . before the effective date." Accordingly, the Plaintiff argues, Bayside, which was created before DUCIOA was

---

[36] 25 *Del. C.* § 81-119.
[37] *Id.* (emphasis added).
[38] *Id.*

11

enacted, cannot be a master planned community under § 81-223 unless and until it amends the Charter, post-enactment, to explicitly incorporate § 81-223.[39]

At bottom, the Plaintiff's reading of § 81-119 would require the following to have been the intent of the General Assembly: Before DUCIOA took effect, a master planned community could designate the conditions under which homeowners' association control would vest in homeowners, and *after* DUCIOA, master planned communities could do the same. But a pre-existing master planned community lost this right upon the enactment of DUCIOA, because the exemption of § 81-223 was not grandfathered under § 81-119. That such was the legislature's intent is unlikely, to my mind.

In fact, I find the Plaintiff's reading of § 81-119 inconsistent with the intent of the provision. It seems to me that § 81-119 confers a benefit to developers of preexisting communities by noting that some new statutory requirements apply, but providing that they only apply prospectively, and not retroactively. It also confers a benefit by clarifying that such communities' declarations are not invalidated so long as they do not conflict with DUCIOA. In other words, § 81-119 is benefit-conferring, not benefit-withholding, to grandfathered common interest community

---

[39] The Defendant has since amended the Charter to that effect; the Plaintiff argues that such amendment is too late, because it came after 75% of units that may be created had been sold and after control of the Association had accordingly vested in the homeowners. I need not reach that issue, however, because I disagree with the Plaintiff's reading of § 81-119.

developers. It would therefore be incongruous to read it as depriving Bayside of the benefit of its master planned community designation.

Bayside is a master planned community under 25 *Del. C.* § 81-223. Accordingly, § 81-303's 75% threshold for control relinquishment does not apply; instead, the Charter provision controls. Because the 75% threshold does not apply, I need not interpret the term "units that may be created" as it is used in § 81-303; to do so would be to issue an advisory opinion.

Because I find the statute unambiguous, I need not determine the legislative intent for providing master planned communities exemption from the requirement that homeowners' associations be turned over to residents' control upon sale of 75% of lots.[40] I note, however, that implementation of a development plan over the long-term build-out of a very large planned community requires greater control by the developer, compared with a small-scale development. In fact, the underlying disputes currently driving this litigation, not pertinent here, are an example of that truism. Whether the exemption is, in balance, good public policy, is not a matter for the Court.[41]

---

[40] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

[41] I therefore need not address the Plaintiff's policy-driven arguments that she and her confreres are enduring "modern day indentured servitude" akin to a "feudal system" which binds the unit holders as "serfs" to the land, and that the unit holders must be "freed from the shackles of contractual bondage." Pl.'s Trial Br., at 11–12, 14, Dkt. No. 33. I note that the unit owners' association in question has a five-member board, of which the developer appoints three members and the unit-owners two. I further note that all five members are bound to act towards the unit owners as fiduciaries bound by duties of care and loyalty; a situation that to my (admittedly

## III. CONCLUSION

For the reasons stated above in this post-trial Memorandum Opinion, I find that Bayside is a master planned community under 25 *Del. C.* § 81-223 and that its Charter provides the operative language for determining when the Defendant's control of the Association's board of directors must cease. The Charter provides for the transfer to take place after the first of these to occur: (a) when 90% of the total number of units permitted by the Community's Master Plan have been sold; (b) December 31, 2024; and (c) when the Defendant voluntarily relinquishes its control.[42]

The Parties should provide an appropriate form of order.

---

limited) understanding of feudalism did not exist to protect serfs. *Compare* 25 *Del. C.* § 81-303(a) *with* Ivan Turgenev, A Sportsman's Notebook (1992).

[42] JA 0899.