# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. No. 1404000692 |
| | ) | Cr. A. No. IN14-12-1394-1396 |
| ALEX RYLE, | ) | |
| Defendant. | ) | |

Submitted: March 11, 2021
Decided:  June 2, 2021

## ORDER

*Upon the Defendant's Motion for Correction of an Illegal Sentence pursuant to Superior Court Criminal Rule 35(a)*
**DENIED.**

This 2nd day of June, 2021, upon consideration of Defendant Alex Ryle's Motion for Correction of an Illegal Sentence (D.I. 128), the State's objections thereto (D.I. 130), and the record in this matter, it appears to the Court that:

(1)    On April 1, 2014, Mr. Ryle was arrested in Wilmington, Delaware, for absconding from probation authorities.[1]  When police searched Mr. Ryle incident to his arrest, they found a firearm.[2]  That Baretta 25-caliber handgun—loaded with nine live rounds of ammunition—was located in Mr. Ryle's right front pant pocket.[3]

---

[1]    *State v. Ryle*, 2015 WL 5004903, at *1 (Del. Super. Ct. Aug. 14, 2015) ("*Ryle I*").

[2]    *Ryle v. State*, 2016 WL 5929952, at *1-2 (Del. Oct. 11, 2016) ("*Ryle II*").

[3]    Trial Tr., Feb. 10, 2015, at 73-74, 75-77, 80, 82 (D.I. 53); *Ryle II*, 2016 WL 5929952, at *1.

The police had been watching Mr. Ryle for some time prior to his arrest.[4] Yet not one officer recognized that he had the gun hidden on his person.[5] Mr. Ryle was later questioned at the police station and confessed to possessing the gun in a post-*Miranda* recorded interview.[6] Due to his previous convictions, Mr. Ryle was a person prohibited from possessing a firearm.[7]

(2)  In February 2015, following a two-day trial, a Superior Court jury convicted Mr. Ryle of Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), and Carrying a Concealed Deadly Weapon-Firearm ("CCDW-Firearm").[8] Mr. Ryle represented himself at trial.[9]

(3)  Mr. Ryle's sentencing occurred in October 2015, after: (a) he prosecuted an unsuccessful *pro se* motion for a new trial;[10] (b) he was (at his

---

[4]  Trial Tr., Feb. 10, 2015, at 61-62, 64, 69.

[5]  *Id.* at 63, 77.

[6]  Trial Tr., Feb. 11, 2015, at 32-34, 38-40 (D.I. 54).

[7]  *Id.* at 28-29.

[8]  *See* D.I. 36 (Verdict Sheet); *see also* DEL. CODE ANN. tit. 11, § 1448 (2013) (defining the crimes of PFBPP and PABPP); *id.* at § 1442 (carrying a concealed firearm).

[9]  *See Ryle I*, 2015 WL 5004903, at *1 (recounting the facts of the crimes and procedural history that led to Mr. Ryle's convictions); *Ryle II*, 2016 WL 5929952, at *1-2 (same).

[10]  *Ryle I*, 2015 WL 5004903.

request) re-appointed counsel for sentencing; (c) a pre-sentence investigative report was prepared; and (d) the State had filed a habitual criminal petition.[11] Mr. Ryle was sentenced to the minimum required for the PFBPP and CCDW-Firearm: 23 years at Level V to be served under the provisions of the then-extant Habitual Criminal Act.[12] Both PFBPP and PABPP charges are varieties of Possession of a Deadly Weapon by a Person Prohibited (PDWBPP) crimes.[13] For the ammunition count, he received eight years at Level V that was suspended in whole for diminishing levels of supervision.[14]

(4)     Mr. Ryle retained new counsel and filed a direct appeal to the Delaware Supreme Court arguing that this Court—though it repeatedly advised him of the

---

[11]   DEL. CODE ANN. tit. 11, § 4214(a) (2013) (providing that a person who had been thrice previously convicted of a felony and was thereafter convicted of another felony could be declared a habitual criminal; the Court could then, in its discretion, impose a sentence of up to life imprisonment for that or any subsequent felony).

[12]   *Id.* (any person sentenced under then-existing § 4214(a) had to receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for any fourth or subsequent Title 11 violent felony for which the State via its habitual criminal petition sought application of the Habitual Criminal Act); DEL. CODE ANN. tit. 11, §§ 1448(c) and (e)(1), 4201(c) and 4205(b)(3) (2013) (PFBPP due to a prior violent felony was, at the time of Mr. Ryle's sentencing, a class C violent felony carrying a statutory maximum of 15 years imprisonment); DEL. CODE ANN. tit. 11, §§ 1442, 4201(c) and 4205(b)(4) (2013) (CCDW-Firearm was, at the time of Mr. Ryle's sentencing, a class D violent felony with an eight-year statutory maximum); DEL. CODE ANN. tit. 11, § 3901(d) (2013) (prohibiting, at the time of Mr. Ryle's sentencing, imposition of concurrent incarcerative terms for PFBPP due to a prior violent felony and any other crime.).

[13]   DEL. CODE ANN. tit. 11, § 1448(a)(1)–(c) (2013).

[14]   Sentencing Order, *State v. Alex Ryle*, ID No. 1404000692 (Del. Super. Ct. Oct. 14, 2015) (D.I. 68).

dangers of doing so—should not have permitted him to proceed *pro se* at trial.[15] The Supreme Court found Mr. Ryle's claims lacked merit (*i.e.*, that this Court properly authorized and honored his waiver of counsel) and affirmed this Court's judgments of conviction and sentence.[16]

(5)   Thereafter, Mr. Ryle filed a timely *pro se* Motion for Postconviction Relief under Superior Court Criminal Rule 61.[17]  He also requested appointment of postconviction counsel.[18]  The Court granted Mr. Ryle's motion for appointment of counsel and that attorney was given leave to amend Mr. Ryle's *pro se* Rule 61 motion.[19]  Ultimately, this Court denied Mr. Ryle postconviction relief and that judgment was also affirmed on appeal.[20]

---

[15]   *Ryle II*, 2016 WL 5929952, *1.

[16]   *Id*. at *3.

[17]   D.I. 89.

[18]   D.I. 90.

[19]   D.I. 99.

[20]   *See State v. Ryle*, 2019 WL 2714817 (Del. Super. Ct. June 27, 2019) (Commissioner's report and recommendation that postconviction relief be denied); *State v. Ryle*, 2019 WL 5306847 (Del. Super. Ct. Oct. 21, 2019) (adopting Commissioner's recommendation and denying postconviction relief); *Ryle v. State*, 2020 WL 2188923 (Del. May 5, 2020) (affirming denial of postconviction relief).

(6) Most recently, Mr. Ryle filed a Motion for Correction of an Illegal Sentence invoking Superior Court Criminal Rule 35(a).[21] Mr. Ryle says that the cumulation of three separate convictions and sentences stemming from his one episode of possessing a loaded handgun violates constitutional or statutory double jeopardy protections. According to Mr. Ryle, the PFBPP and PABPP crimes are merely lesser-included offenses of his CCDW-Firearm charge. Too, he says, the Delaware General Assembly failed to clearly set forth its unambiguous intent that PFBPP/PABPP and CCDW-Firearm could be charged from one continuous event. Mr. Ryle alleges that both his PFBPP and PABPP charges should be vacated so as to rectify his "illegal" sentence. While he suggests otherwise, Mr. Ryle chooses the CCDW-Firearm as the greater offense because it carries the lesser of his mandatory sentences. He'd like to erase his consecutive 15-year PFBPP minimum mandatory sentence.

(7) The federal Double Jeopardy Clause contains three protections. *First*, "[i]t protects against a second prosecution for the same offense after acquittal."[22] *Next*, "[i]t protects against a second prosecution for the same offense after

---

[21] Relief under Rule 35(a) is available when, *inter alia*, the sentence imposed: exceeds the statutorily-authorized limits; omits a term required to be imposed by statute; is uncertain as to its substance, or is a sentence that the judgment of conviction did not authorize. *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998).

[22] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (citing cases).

conviction."[23]  And *lastly*, "it protects against multiple punishments for the same offense."[24]   This last Double Jeopardy protection—against what is called "multiplicity"—is at issue here.[25]

(8)    Convictions are considered multiplicitous when a defendant faces "multiple punishments for the same offense where [the legislature] has not authorized cumulative punishment."[26]   But cumulative punishments for a single occurrence are not considered to be double jeopardy where the legislature expresses an unambiguous intent for that single occurrence to accrue such liability.[27] Importantly, the bar against multiplicity is *not* a Constitutional prohibition against multiple punishments or convictions from a single act, but only a requirement that such punishments or convictions derive from the clear expression of the legislature,

---

[23]   *Id*.

[24]   *Id*.

[25]   *Williams v. State*, 796 A.2d 1281, 1286 (Del. 2002) ("Multiplicity is the charging of a single offense in more than one count of an indictment. Dividing one offense into multiple counts . . . violates the double jeopardy provisions of the constitutions of the State of Delaware and of the United States.") (internal quotation marks omitted).

[26]   *United States v. Ogba*, 526 F.3d 214, 232-33 (5th Cir. 2008).   Federal courts thus view multiplicitous prosecutions as creating new criminal laws in a judicial setting, an arrogation of legislative authority in violation of separation of powers. *Whalen v. United States*, 445 U.S. 684, 689 (1980).

[27]   *State v. Cook*, 600 A.2d 352, 356 (Del. 1991) (citing *Grady v. Corbin*, 495 U.S. 508 (1990)). A different holding in *Grady* related to successive-prosecution cases has been overturned but is not implicated here and does not upset the *Cook* decision. *United States v. Dixon*, 509 U.S. 688, 704 (1993).

whether federal or state.[28]  In Delaware, the intent of the legislature is expressed in the plain meaning of an unambiguous statute.[29]

(9)    Thus, when addressing the multiplicity issue in a given circumstance "the primary inquiry must be one of statutory construction and whether there exists clearly expressed legislative intent to impose multiple punishments."[30]  Analysis of a constitutional objection ordinarily first inquires as to whether the statute in fact raises the constitutional issue alleged, because in Delaware "a constitutional question will not be decided unless its determination is essential to the disposition of the case."[31]  "But because the bounds of the federal Double Jeopardy Clause's protection itself is measured only by a rule of statutory construction, this normal procedure is inapplicable and the two steps become one."[32]

(10)   Where a constitutional claim is brought under similar clauses present in both the Delaware and United States Constitutions, the court must "apply a logical, deductive analytical process" to determine if the Delaware Constitution

---

[28]    *Missouri v. Hunter*, 459 U.S. 359, 365-66 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

[29]    *Ross v. State*, 990 A.2d 424, 428-29 (Del. 2010).

[30]    *Nance v. State*, 903 A.3d 283, 286 (Del. 2006).

[31]    *Downs v. Jacobs*, 272 A.2d 706, 708 (Del. 1970) (citing cases).

[32]    *State v. Brown*, 2020 WL 5122968, at *2 (Del. Super. Ct. Aug 20, 2020).

affords any protection beyond the federal Constitution.[33] Thus, the Court must necessarily examine the Constitution of the United States before it can determine if Delaware protections go further.[34] The Double Jeopardy Clauses in the Delaware and United States Constitutions appear in "virtually identical" terms,[35] so this is a case where examination of the Delaware Constitution must necessarily be the final step.

(11) Mr. Ryle posits that conviction and sentencing of an offense included in another offense charged in the same indictment implicates the multiplicity doctrine.[36] Where the Court concludes a criminal defendant is convicted in the same trial of an offense included in another of which he is simultaneously found guilty,

---

[33] *Jones v. State*, 745 A.2d 856, 864 (Del. 1999).

[34] *See State v. Xenidis*, 212 A.3d 292, 300-01 (Del. Super. Ct. 2019) ("While this Court need not be reluctant, where warranted, to show greater sensitivity to Delawareans' individual rights under our Constitution than the United States Supreme Court accords to their rights under the Federal Constitution . . . the question of state constitutional adjudication is not whether this Court may interpret our constitution differently than the federal constitution, the issue is whether we must." (cleaned up)), *aff'd*, 2020 WL 1274624 (Del. Mar. 17, 2020). The United States Supreme Court would prefer that states address their own constitutions first so that its own review does not amount to an advisory opinion. *Michigan v. Long*, 463 U.S. 1032, 1040 (1983) (citing *Herb v. Pitcairn*, 324 U.S. 117, 125 (1945)). But Delaware has, where appropriate, eschewed that suggested procedural preference. *E.g. Jones*, 745 A.2d at 860-65; *Sanders v. State*, 585 A.2d 117, 144-45 (Del. 1990); *Van Arsdall v. State*, 524 A.2d 3, 6 (Del. 1987).

[35] *Tarr v. State*, 486 A.2d 672, 673 n.1 (Del. 1984). The Fifth Amendment's Double Jeopardy Clause applies to the states via incorporation through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (overturning *Palko v. Connecticut*, 302 U.S. 319 (1937)).

[36] Def. Rule 35(a) Mot., at 2-3 (D.I. 128) (citing *State v. Willis*, 673 A.2d 1233 (Del. Super. Ct. 1995)).

principles of double jeopardy bar the Court from sentencing him for both—the lesser merges into the greater for the purposes of sentencing.[37]  But there is no greater/lesser-offense relationship between PDWBPP and CCDW.

(12)  According to Mr. Ryle, PFBPP and PABPP charges are lesser included offenses of the CCDW charge as defined by 11 *Del. C.* § 206(b)(3) because they (1) "involve the same result—unlawful possession of a firearm/ammunition" and (2) the elements needed to prove the offenses differ in no significant way.[38]  While Mr. Ryle offers a creative take on defining these subject offenses, their purposes, and the applicable lesser-offense test,[39] he's off the mark in his attempt to do so.

(13)  "Unlawful possession of a firearm/ammunition"[40] is not a "result" as that is understood in Delaware criminal law—it is the act itself.[41]  And while sharing general thematic public safety similarities, any definable resultant "injury or risk of

---

[37]  *Poteat v. State*, 840 A.2d 599 (Del. 2003).

[38]  Def's Mot. at 3 (D.I. 128).

[39]  *See Key v. State*, 463 A.2d 633, 641 (Del. 1983) (Observing that the lesser-included-offense "analysis is actually one of comparing 'the substantive statutes and the underlying definitions.'").

[40]  *Id.*

[41]  *See* DEL. CODE ANN. tit. 11, § 232 (2013) (When defining a criminal offense in the Delaware Code, "[e]lements of an offense are those physical acts, attendant circumstances, results and states of mind which are specifically included within the definition of the offense."  Perforce, those "physical acts," "attendant circumstances," and "results" necessary to define an offense are understood to each be distinct elements.).

injury to the . . . public interest" from the commission of CCDW or a PFBPP offense is indeed different.[42]

(14)   The specific aim of the CCDW statute is "to remove the 'temptation and tendency' to use concealed deadly weapons under conditions of 'excitement.' The legislative purpose, originally and presently, seems to be the avoidance of a deadly attack against another by surprise."[43]   On the other hand, our PFBPP statute seeks to protect society from gun violence by "previously-convicted violent felons and drug dealers by increasing the punishment for their illegal possession of a firearm."[44]   So one of the statutes (CCDW) really concerns itself with the conditions —immediate and concealed—under which a weapon is possessed. The second (PFBPP) concerns who possesses that weapon.

(15)   As well, two statutory provisions are non-multiplicitous under the federal Double Jeopardy Clause and support separate indictments, convictions, and punishments where "each provision requires proof of a fact which the other does not."[45]  Multiplicity is avoided if the different charges each have an element whose

---

[42]   *Id*. at § 206(b)(3) (providing that, *inter alia*, an offense in included in another when "[i]t involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same . . . public interest . . . suffices to establish its commission.").

[43]   *Dubin v. State*, 397 A.2d 132, 134 (Del. 1979) (cleaned up).

[44]   *Ross v. State*, 990 A.2d 424, 431 (Del. 2010).

[45]   *Nance*, 903 A.2d at 286 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

proof does not necessarily satisfy an element in the other charge, even if a single continuous or concurrent act proves an element in multiple charges.[46]

(16) The prohibitory clause of PDWBPP reads: "[a]ny prohibited person as set forth in subsection (a) of this section who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited."[47]

(17) "A conviction for PFBPP requires proof that a defendant was a prohibited person and knowingly possessed a firearm;" "a conviction for PABPP requires proof that a defendant was a prohibited person and knowingly possessed firearm ammunition."[48] There is no specific manner in which the gun or ammo must be held. Prohibited status coupled with defined "possession" or "control" will suffice.

(18) By contrast, "a person is guilty of CCDW when the person carries

---

[46] *See United States v. Reed*, 639 F.2d 896, 905 (2d Cir. 1981) ("[I]t was not improper for the Government to charge that a single act violated both the general mail fraud statute and various fraud provisions of the securities law involving use of the mails. . . the same transaction may violate two distinct provisions of the same statute or different statutes and be punishable under both as separate substantive crimes.") (quoting *United States v. Van Allen,* 28 F.R.D. 329, 343 (S.D.N.Y. 1961)).

[47] DEL. CODE ANN. tit. 11, § 1448(b) (2013).

[48] *Crosby–Avant v. State*, 2018 WL 2427595, at *4 (Del. May 29, 2018).

concealed a deadly weapon upon or about the person without a license to do so . . ."[49]  "The elements needed to be established to support a conviction for CCDW [are] different from those elements needed to be established to support a conviction for PFBPP or PABPP.  For a CCDW conviction, the weapon must have been under the defendant's immediate control at the time."[50]  Indeed, "[t]he act of 'carrying' a deadly weapon in a 'concealed' manner requires a different test than possession."[51]  And a defendant can be convicted of CCDW without any proof that he was a prohibited person.[52]  Though CCDW, PFBPP and PABPP *can* be completed with a single act of handling a loaded firearm,[53] each crime is objectively susceptible to

---

[49]  *Gallman v. State*, 14 A.3d 502, 504 (Del. 2011).

[50]  *State v. McDougal*, 2017 WL 6372516, at *5 (Del. Super. Ct. Dec. 11, 2017).

[51]  *Gallman*, 14 A.3d at 505 n.6.

[52]  *See* DEL. CODE ANN. tit. 11, § 1442 (2013) (There is no requirement in the defining statute that the offender be a person legally prohibited from concealed carrying due to some status, only that she does not have a permit to do so.).

[53]  *E.g. Manuel v. State*, 2018 WL 2127136 (Del. May 8, 2018) (defendant convicted and sentenced for CCDW, PFBPP, and PABPP for a loaded handgun found in his pants pocket); *Water v. State*, 2016 WL 315763 (Del. Jan. 8, 2016) (defendant convicted and sentenced for CCDW, PFBPP, and PABPP for a loaded handgun he threw behind a parked vehicle as he ran from police); *McDougal v. State*, 2015 WL 7272051 (Del. Nov. 16, 2015) (defendant convicted and sentenced for CCDW, PFBPP, and PABPP for a loaded handgun found in his vehicle); *State v. Wright-Clayton*, 2018 WL 5310766 (Del. Super. Ct. Oct. 23, 2018) (defendant convicted and sentenced under the Habitual Criminal Act for CCDW, PFBPP, and PABPP for a loaded handgun found in his pants pocket); *State v. Green*, 2016 WL 6156169, at *1-2 (Del. Super. Ct. Oct. 11, 2016) (defendant convicted and sentenced for CCDW, PFBPP, and PABPP for a loaded handgun he threw under a vehicle when chase by police).

independent commission and proof.[54]

(19)  Thus, there is no double jeopardy issue.  For this reason, Mr. Ryle's motion for correction of an illegal sentence is **DENIED**; he was properly sentenced for the CCDW, PFBPP, and PABPP counts as separate offenses.

**SO ORDERED** this 2nd day of June, 2021.

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:  John S. Taylor, Esquire, Deputy Attorney General
Alex Ryle, *pro se*

---

[54] *See Manuel*, 2018 WL 2127136, at *2 (Concisely outlining the different proofs needed under an indictment charging these three weapons offenses for a single loaded handgun found on defendant's person: "Manuel stipulated that he was a person prohibited from possessing a firearm. Therefore, the outcome of the PFBPP and PABPP charges turned on whether the State could prove beyond a reasonable doubt that he knowingly possessed a firearm and ammunition on [the date alleged.]  The outcome of the CCDW charge turned on whether the State could prove beyond a reasonable doubt that Manuel concealed a firearm "upon or about [his] person without a license to do so.").